LEVINE et al. *v.* MORELAND, ETC., et al.

[No. 319, September Term, 1961.]

232

*Decided July 5, 1962.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Daniel I. Sherry,* with whom were *Harvey Rosenberg* and *Claude B. Kahn* on the brief, for appellants.

*Alfred H. Carter, County Attorney* and *Richard J. Sincoff, Assistant County Attorney,* for appellees.

HORNEY, J., delivered the opinion of the Court.

This case was initiated as a mandamus proceeding to determine whether the book, *Tropic of Cancer*, by Henry Miller, had been lawfully removed from circulation in the Montgomery County Public Library, but it was decided on a motion for a summary judgment by dismissing the petition for a writ of mandamus on the ground that the book is obscene. This appeal followed.

Prior to October 21, 1961, several copies of the book in question, purchased with public funds, had been in general circulation for the use of the reading public. But, on that date when the petitioners (Aaron M. Levine and Barbara Levine), who are residents and taxpayers of the county, went to the Silver Spring branch of the public library and requested a copy of *Tropic of Cancer*, they were advised that the book was not available to the public because all copies of it had been removed from circulation by the Librarian (George Moreland) on instructions from the County Manager (Mason A. Butcher). These county officials are usually herein referred to as the respondents.

For the purpose of contesting the action of the respondents in removing the book and to compel replacement of it, the petitioners, on the basis of the facts related above and a further allegation that the withdrawal of the book was "an unlawful, arbitrary and capricious exercise of authority" and "an illegal act of censorship," filed the petition for a writ of mandamus. The respondents, who did not demur, answered the petition and admitted all of the pertinent allegations (other than the assertion that the removal of *Tropic of Cancer* from circulation was unlawful and an illegal act of censorship which they denied) and then averred, among other things, that the book was in fact lewd, obscene and indecent within the meaning of Code (1957), Art. 27, § 418; that even if the book is not obscene they were under no requirement or duty to keep in circulation all books once purchased; and that their action was not unlawful. On the same day the respondents moved for summary judgment as a matter of law on the ground that there was no genuine dispute as to a material fact, but they

filed no supporting affidavits, depositions or admissions either then or later. And the petitioners, although they sought to take the depositions of the respondents and another person to support the petition for mandamus as well as a sixty-day extension of time within which to file an answer to the motion for summary judgment, failed to plead to or otherwise oppose the motion for summary judgment.

When the motion for summary judgment came on for hearing pursuant to notice thereof, the trial court refused to permit the taking of depositions or to extend the time for filing an answer. But, apparently because there were no affidavits, depositions or admissions on file to show whether or not there was a genuine dispute as to the obscenity of the book, the court proceeded forthwith to *try* the case on the issue of obscenity, and thereafter granted the motion for summary judgment. And, in trying the issue of fact, the court accepted as exhibits the literary reviews the parties had "agreed upon and offered" as evidence and permitted the opposing parties to make "proffers of evidence and testimony" and stipulations, but refused to postpone the case to allow the attendance of witnesses.

The petitioners offered to produce "educated citizens" as witnesses who would testify that *Tropic of Cancer* would not excite prurient interest; expert witnesses who would testify that in their opinion the book has literary merit; and certain other experts who would testify regarding the prevailing literary and moralistic standards in the community. On the other hand, the respondents offered to produce more than one thousand letters to the effect that the book is obscene. The respondents also stipulated "that Grove Press is in the hardbook publishing business; that it has published such books as *Lady Chatterley's Lover* and *Tropic of Cancer;* that it has published many respectable books; and that it is a well-known publishing house."

There is a further statement in the record extract that the court "accepted the foregoing evidence and testimony as being in the record and based its decision on the motion for summary judgment on the record as if such evidence and testi-

mony were before the court." And in an "agreement" between the parties as to the rulings of the court, it is stated, among other things, that the court conceded that if the petitioners were given time to produce expert witnesses, such witnesses would testify as to the literary merit of the book and as to contemporary community standards, and that other witnesses would testify that the book did not arouse prurient interest. It was further agreed that the trial judge stated that if this was "the reason for" wanting a postponement of the trial, he thought he "ought to dispose of it," meaning, we assume, that the judge thought it was unnecessary to grant a postponement to hear the expert witnesses.

The trial court ruled that the book was obscene, dismissed the petition for mandamus and entered a judgment for costs in favor of the respondents against the petitioners. But the opinion of the court, though it discussed the law at some length, does not indicate—other than the fact that the trial judge had read the book and had found it to be "sexually morbid, grossly perverse and with no artistic or scientific purpose to justify the publication"—that much consideration was given to the evidence, such as there was, concerning literary merit, contemporary community standards and the effect of the book with respect to prurient interest.

On appeal, the appellants raised questions concerning the denial of the several motions they had interposed from time to time, but in their brief and on oral argument it was primarily contended: (i) that the issue for the lower court to decide was whether the county officials had acted lawfully and not whether *Tropic of Cancer* was obscene; (ii) that the court could not decide the issue of obscenity on a motion for summary judgment; and (iii) that the court erred when it accepted as evidence the "testimony" of the experts and other witnesses as though it had been produced before the court.

(i)

A question as to whether the county officials were acting in the exercise of discretionary authority or a ministerial duty when they withdrew *Tropic of Cancer* from circulation was squarely raised by the mandamus proceeding challenging the

removal of the book from the shelves of the public library, and should have been answered by the lower court, but was not. The respondents, because they believed—as was conceded in their brief and oral argument — that they were without authority to remove the book from circulation until it had been declared to be obscene, chose not to contest the issue concerning their discretion by demurrer or otherwise, and instead sought a determination of the obscenity issue on a motion for summary judgment. And, although the court stated in its opinion that the county officials had a right to remove the book from circulation for the protection of the morals of the community, that conclusion was based on its ruling that the book was obscene and not on the theory that the officials were acting within the scope of discretionary power. Apparently, the lower court, having found that the book was obscene, deemed it unnecessary to consider whether the respondents, in the exercise of discretion, had authority to withdraw the book. The finding of obscenity, however, did not relieve the court from also deciding the principal issue raised by the petition for mandamus, but since the court saw fit not to do so, we express no opinion as to the question.

(ii)

Inasmuch as the issue of obscenity was clearly a disputed question of fact, we agree with the appellants that the lower court should not have decided it on the motion for summary judgment. The summary judgment rule—Maryland Rule 610 —was not designed as a substitute for a trial or to decide an issue of fact, but merely provides for a hearing to determine whether there is an issue of fact to be tried. *Pullman Co. v. Ray*, 201 Md. 268, 94 A. 2d 266 (1953); *Strickler Eng. Corp. v. Seminar*, 210 Md. 93, 122 A. 2d 563 (1956); *White v. Friel*, 210 Md. 274, 123 A. 2d 303 (1956); *Tellez v. Canton Railroad Co.*, 212 Md. 423, 129 A. 2d 809 (1957); *Carroccio v. Thorpe*, 222 Md. 38, 138 A. 2d 660 (1960). The allegation in the petition that the withdrawal of *Tropic of Cancer* was an illegal act of censorship and the unsupported assertion in the answer to the petition that the book was obscene clearly showed that a material fact was actually and in good faith contro-

verted, but, the court, instead of directing further proceedings pursuant to Rule 610 d 4, proceeded to try the question of fact forthwith on the motion. This was improper, and the judgment must therefore be reversed and the case remanded for further proceedings.

(iii)

Since we hold that there should have been a regular trial of the issue of obscenity, it is not necessary to formally consider the remaining question with respect to the refusal of the court to receive the live testimony of the experts and other witnesses the petitioners offered to produce. For if and when a trial of the issue of obscenity takes place, both sides will, of course, have full opportunity to summon such expert and other witnesses as each may desire to testify regarding literary merit, contemporary community standards and prurient interest. We point out, however, that the testimony of such witnesses (if it is otherwise competent) is admissible and should then be received.

While it is true that an exhibit of allegedly obscene material—such as *Tropic of Cancer*—speaks for itself and must in every case be perused and examined with care by the trier of facts that has the responsibility of determining the issue of obscenity, that does not mean, as we pointed out in *Yudkin v. State*, 229 Md. 223, 182 A. 2d 798 (1962), decided contemporaneously herewith, that other competent evidence tending to show obscenity or the lack of it should be excluded as irrelevant or immaterial.

Of course, the qualifications of expert or skilled witnesses to testify is a matter for the trial court to pass upon in the first instance. See *Yudkin v. State, supra.*

While we conclude there must be a reversal and a remand, we should not be understood as expressing an opinion as to whether *Tropic of Cancer* is or is not obscene.

> *Judgment reversed and case remanded for further proceedings; the costs of this appeal to be paid by Montgomery County.*