## DUNN ET AL. v. MARYLAND STATE BOARD OF CENSORS

[No. 260, September Term, 1965.]

*Decided October 20, 1965.*

The cause was argued before Prescott, C. J., and Hammond, Horney, Marbury, Oppenheimer and McWilliams, JJ., and Proctor, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*William M. Nickerson,* with whom were *Richard C. Whiteford* and *Due, Whiteford, Taylor & Preston* on the brief, for the appellants.

*Fred Oken, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellee.

Hammond, J., delivered the majority opinion of the Court. Horney, J., dissents. Dissenting opinion at page 257, *infra*.

The Maryland State Board of Censors refused to license the motion picture "Lorna" and then, as required by Sec. 19 of Art. 66A of the Code as reenacted by Ch. 598 of the Laws of 1965, applied to the Circuit Court of Baltimore City "* * * for a judicial determination as to whether such film is obscene, or tends to debase or corrupt morals, or incite to crime, within the meaning of Section 6 hereof." Judge Prendergast viewed the film, and the next day "* * * having determined upon consideration of the film, the pleadings, and the argument of counsel,

that said film is in violation of the provisions of Article 66A, Section 6 * * *," ordered that the film "Lorna" be disapproved for licensing by the Board.

In its petition for judicial determination, the Board recited that it had found that the film:

> "* * * goes substantially beyond customary limits of candor in description and representation of sex, that it deals purposely and effectively with sex in a manner which appeals to prurient interest, that it is without social importance, and that it lacks any identifiable artistic, cultural, thematic or other value which might be considered redemptive."

This phraseology would appear to be a stereotyped form which the Board believes embodies the standards of the Supreme Court as to what must be found if a film is to be held obscene. The Board made the same finding, word for word, as to the film "A Stranger Knocks," after which "Lorna" appears to have been crudely and vulgarly patterned to some significant extent, and Judge Prendergast found that film to be obscene. In *Trans-Lux Distributing Corp. v. Maryland State Board of Censors,* 240 Md. 98, we held that "A Stranger Knocks" is not obscene under the definition of obscenity promulgated by the Supreme Court and does not transgress the standards of Maryland's film censorship statute, assuming those standards to be constitutional and valid.

In his opinion in this case Judge Prendergast held that the provisions of Sec. 6 of Art. 66A were constitutionally valid. "* * * I think the statute that is now in force and effect meets the requirements in a line of cases decided by our highest court." On the facts he found the film to be (a) "* * * utterly obscene and * * * completely violative of the Maryland statute and of all the decisions I have read as announced by the Supreme Court of the United States"; and (b) "* * * utterly without any value, scientific, social, cultural, or artistic," and concluded: "For these reasons, and because the Court has no evidence to rule to the contrary, I will enter an order affirming and approving the ruling of the Board * * *."

It seems too plain for serious doubt that the legislative di-

rection in Code (1957), Art. 66A, Sec. 6, that the Board shall disapprove such films "* * * as are obscene, or * * * tend, * * * to debase or corrupt morals * * *" (even as limited by the definitions of the terms "obscene" and "tend to debase or corrupt morals" spelled out later in Sec. 6) is so broad as to be fatally at variance with the rulings of the Supreme Court as to what the State constitutionally can ban from the public's viewing.

In the *Trans-Lux* case, we referred to the holding in *Roth v. United States,* 354 U. S. 476, 1 L. Ed. 2d 1498, that only what is obscene is without the constitutional protection of freedom of speech and expression, and reiterated the definition of what is obscene as spelled out in *Roth* and as stabilized, for the foreseeable future at least, by the decision in *Jacobellis v. Ohio,* 378 U. S. 184, 12 L. Ed. 2d 793. The opinion of the Court in *Jacobellis,* at 191, 12 L. Ed. 2d 800, said *Roth* had defined obscene material as follows: material is obscene if "* * * to the average person, applying contemporary community standards [national standards said Justice Brennan; local standards said Chief Justice Warren in dissent with Justice Clark], the dominant theme of the material taken as a whole appeals to prurient interest * * *." Obscenity is excluded from constitutional protection only because it is "* * * utterly without redeeming social importance * * *" *Id.* at 191, 12 L. Ed. 2d 800, and the portrayal of sex in art, literature and scientific works is not itself reason to deny material the constitutional protection of freedom of speech and press, and material dealing with sex in a manner that advocates ideas or that has literary or scientific or artistic value or any other form of social importance may not be branded as obscenity. The constitutional status of a film, or other material, may not be made to turn on a "weighing" of its social importance against its prurient appeal, for a work cannot be proscribed unless it is "utterly" without social importance. To be obscene, the material must go substantially beyond customary limits of candor and thus must deviate from society's standards of decency in the description or representation of matters dealt with.

In *Trans-Lux,* because the film was not obscene under the federal standards, we said "* * * even if the Maryland stan-

dards in Section 6 were violated by the film, the Board could not constitutionally refuse to license it under the Roth-Alberts Rule, as amplified and explained * * *." We hold that the right and power of the Board to ban films as "obscene" or as tending "to debase or corrupt morals" under Sec. 6 of Art. 66A extends only to motion pictures which are obscene under the *Roth* test referred to and paraphrased in *Trans-Lux* and in this opinion. The cases of *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N. Y.*, 360 U. S. 684, 3 L. Ed. 2d 1512, and *Roth* and *Jacobellis*, following *Winters v. New York*, 333 U. S. 507, 92 L. Ed. 840, and *Joseph Burstyn, Inc. v. Wilson*, 343 U. S. 495, 96 L. Ed. 1098, make it manifest that only material which is obscene under the *Roth* test can be censored or suppressed by a state, and that a state may not effectively substitute its definition of what is obscene for the *Roth* definition. The Maryland definition of what tends to debase or corrupt, found in Sec. 6, is almost word for word that of the New York statute which was held unconstitutional in *Kingsley*.

The Maryland definition of "incite to crime" is highly suspect, if not entirely invalid, under the holding in *Winters*, but there is no need to rule on that point in this case because neither the Board nor Judge Prendergast made a finding that "Lorna" did incite to crime, and, although the film portrayed scenes of revolting brutality and violence, the commission of crime is not made appealing, profitable, desirable or commonly accepted behavior.

We think that Judge Prendergast's finding that "Lorna" should not be licensed for exhibition cannot be sustained on this record because the Board did not meet its burden of proving that the film is obscene. The Supreme Court, in striking down Maryland's censorship law in 1965 in *Freedman v. Maryland*, 380 U. S. 51, 13 L. Ed. 2d 649, held that a law which required the prior submission of a film to a censor avoids constitutional infirmity only if it provides safeguards designed to obviate the dangers of a censorship system, the first of which was said to be that "* * * the burden of proving [to a reviewing court] that the film is unprotected expression must rest on the censor." *Id.* at 58, 13 L. Ed. 2d 654. When the Legislature passed Ch. 598 of the Laws of 1965 to meet the demands of

the Supreme Court and provide the requisite procedural safe-guards of a valid censorship system, it amended the act amending the censorship law in Sec. 19 of Art. 66A (dealing with application to the circuit court for a judicial determination as to licensability and an appeal to this Court) to add the provision that "the burden of proving that the film should not be approved and licensed shall rest on the Board." This requirement follows the words of the statute that the circuit court shall "* * * conduct a hearing, and shall in connection therewith view such film * * *" and the direction that on appeal the Court of Appeals shall also view the film.

In the present instance the Board did no more than offer the film; it produced no other evidence whatever. We think it plain that save in the rare case where there could be no doubt that the film is obscene the Board will not meet the burden of per-suasion imposed on it by the Constitution and the statute without offering testimony that the picture is obscene in that (a) the average person, applying community standards, would find that its dominant theme, taken as a whole, appeals to pru-rient interest, (b) that the film goes substantially beyond cus-tomary limits of candor in description or representation of sex or other matters dealt with, and (c) that it is subject to pro-scription because it is utterly without redeeming social im-portance considered in light of the fact that "* * * sex and obscenity are not synonymous," *Roth,* 354 U. S. 476, 487, 1 L. Ed. 2d 1498, 1508, and the fact that material dealing with sex in a manner that advocates ideas or has literary, scientific or artistic value or any other form of social importance may not be branded as obscenity. In our view, neither the judge who may sit in the circuit court to review the action of the Board nor the judges of this Court ordinarily would be qualified to determine whether a film exceeded these constitutional stan-dards or tests without enlightening testimony on these points. In "A Stranger Knocks," while the Board did not offer such testimony, the producer and would-be exhibitor of that picture did. For example, it was shown that the United States Bureau of Customs had admitted the film as not obscene, and that it had been exhibited in twenty-three states to not less than 250,000 people without apparent harmful effects. The philosophical back-

ground of the picture was described by its producer in an affidavit. Favorable criticisms by experienced critics all over the country were presented. Other experts in the field testified that the picture was not obscene.

In *Yudkin v. State,* 229 Md. 223, 227-28, Yudkin appealed his conviction for selling an obscene book ("Tropic of Cancer"), and we reversed because expert testimony as to the status of the book under the *Roth* test was excluded by the trial court. We pointed out that allegedly obscene material speaks for itself as evidence, but that this does not mean that "other competent evidence tending to show that the book is *not* obscene should be excluded as irrelevant or immaterial." We held that testimony which should have been admitted included that of experts "* * * who, had they been allowed to do so, would have testified that the book had literary merit, that it fell within contemporary community standards and that it would not stimulate lustful thoughts in the average reader," as well as books allowed to be sold in the community comparable to "Tropic of Cancer," a "study" or critique of the book by a novelist and critic and the fact that the Post Office Department had ruled the book to be mailable. In *Levine v. Moreland,* 229 Md. 231, 236, which also dealt with "Tropic of Cancer," we said that since "* * * the issue of obscenity was clearly a disputed question of fact, we agree with the appellants that the lower court should not have decided it on the motion for summary judgment." (The trial judge had ruled that after reading the book he was capable of deciding the critical questions under the *Roth* rule without the aid of other evidence.) We reiterated the rule that the allegedly obscene material "* * * must in every case be perused and examined with care by the trier of facts * * *," but also said:

> "* * * if and when a trial of the issue of obscenity takes place, both sides will, of course, have full opportunity to summon such expert and other witnesses [whose qualifications to testify as experts or skilled witnesses is a matter for the trial court initially to determine] as each may desire to testify regarding literary merit, contemporary community standards and prurient interest." *Id.* at 237.

Testimony of the type given as to "A Stranger Knocks" and offered in *Yudkin* and *Levine* as to "Tropic of Cancer" should be available to the Board as to almost every film it thinks is obscene. Save in the case of the exceptional motion picture which not only speaks for itself but screams for all to hear that it is obscene, the Board under the statute of 1965 will need more than the film to support its opinion in court.

We found the picture "Lorna," despite its implied showings of sexual intercourse, as in "A Stranger Knocks," and of female nudity to be tiresome, boring, cheap, often vulgar and sometimes revolting, but we do not feel qualified to say by virtue of a viewing of the picture only—anymore than was Judge Prendergast, in our opinion—that to the average person applying either local or national contemporary community standards the dominant theme of "Lorna" was an appeal to prurient interest, or that the picture exceeded customary limits of candor in its representations of sex or the sexual mores of the community pictured or that it was utterly without redeeming social importance or literary or artistic value.[1]

Since the Board did not meet its burden of proving the motion picture "Lorna" to be obscene the order appealed from must be reversed.

*Order reversed, with costs.*

HORNEY, J., filed the following dissenting opinion.

There is no disagreement between the members of this Court that only material which is obscene under the *Roth-Alberts* test can be censored or suppressed by the Maryland Board of Censors and that the Legislature may not by statute substitute its definition of what is obscene for the *Roth-Alberts* rule. Nor is there any disagreement between us that the Board, which has the burden of producing evidence to show obscenity, ordinarily will not have met its burden by merely exhibiting a motion

---

1. We were told at the argument by the appellant, without contravention by the State, that "Lorna" has been shown throughout the United States and that when an exhibitor in a midwestern state showed it, he was tried for showing an obscene motion picture and a jury of nine women and three men acquitted him.

picture to the courts (including this Court) as the trier of facts. But we do not agree as to the result to be reached in this case.

Since there was no evidence one way or the other (aside from the showing of the film) with respect to its obscenity or the lack of it or as to the relevant community standards, it is apparent to me that "Lorna," which is utterly devoid of any artistic, social, cultural or scientific value, and in which the predominantly pornographic theme was deliberately accentuated, is one of those motion pictures as to which no proof, other than the viewing of it, is required to determine that it is in fact obscene under the *Roth-Alberts* test.

I would affirm, or at least, remand the case for the production of other evidence if that be deemed desirable or necessary instead of releasing it because the Board failed to take additional evidence as the statute required.