UNITED STATES of America

v.

1,000 COPIES OF a MAGAZINE ENTI-TLED "SOLIS", Volume 84.

Civ. No. 17220.

United States District Court
D. Maryland.

May 16, 1966.

Thomas J. Kenney, U. S. Atty., Arthur G. Murphy, First Asst. U. S. Atty., and Fred K. Grant, Asst. U. S. Atty., Balti-more, Md., for libelant.

Robert Eugene Smith and Melvin Rankin, Baltimore, Md., for claimant.

THOMSEN, Chief Judge.

In this proceeding under section 305 of the Tariff Act of 1930, 19 U.S.C.A.

1305,[1] the government seeks forfeiture on grounds of obscenity of 1,000 copies of a magazine entitled Solis 84, imported from Denmark.[2] The importer (Claimant) contends that the material is not obscene, and also contends that section 1305 is unconstitutional [3] and that it has been unconstitutionally applied in this case, in that the officials in the office of the District Director of Customs have exercised their apparent authority in an arbitrary and discriminatory manner, resulting in substantial injustice to Claimant. The latter points will be considered first.

I.

In an opinion filed on April 4, 1966, in three consolidated cases, United States v. 392 Copies of Magazine Entitled "Exclusive" et al., 253 F.Supp. 485, this Court concluded that section 1305 of Title 19 is not unconstitutional. The Court adheres to that conclusion.

II.

In the *Exclusive* opinion, and in another opinion filed on April 5, 1966, in two consolidated cases, United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun", 498 F.Supp. 253, this Court discussed at length the procedures followed by Customs in handling obscene or possibly obscene publications before February 8, 1966, and the procedures proposed to be followed after that date. The Court concluded, for reasons set out in those opinions, that section 1305 had not been applied unconstitutionally in those cases. It is not necessary to repeat the discussion. It need only be added that the reorganization of the Customs Service, which is proceeding port by port and became effective in Baltimore on April 1, 1966, has caused considerable shifting of personnel in the Baltimore District. Although the Court does not agree with Claimant's contention that the procedures in the instant case were arbitrary or discriminatory, it does appear that some of the Customs officials do not understand the applicable law and the applicable procedures. It is highly desirable that the responsible officials in the Bureau of Customs establish practical procedures as soon as possible to assist the personnel of the Baltimore District in carrying out their difficult responsibilities in this field.

III.

At one point in the hearing, Claimant contended that this proceeding, which was instituted under 19 U.S.C.A. 1604, should be dismissed because the report of the District Director to the United States Attorney of the alleged violation did not include, as required by 19 U.S.C.A. 1603, "a statement of all

1. That section is set out in note 1 to the opinion of this Court in United States v. 392 Copies of Magazine Entitled "Exclusive", filed April 4, 1966, 253 F.Supp. 485, referred to herein as the *Exclusive* opinion.

2. On March 31, 1966, a shipment of three cartons containing 1,000 copies of *Solis 84*, imported from Denmark, arrived at Dulles International Airport consigned to custom house brokers on behalf of Central Magazine Sales, Ltd., and was formally entered in the port of Baltimore on April 6. The shipment was examined by the commodity specialist, who thought the magazine was probably obscene, and referred it to Assistant District Director Murray on that date. Murray agreed, and on April 8 a sample was sent to the District Director of Customs through the Customs Agent. The District Director concurred and submitted the magazine to the office of the United States Attorney for a determination as to whether libel proceedings should be instituted pursuant to 19 U.S.C.A. 1604 and 1305. The pending libel was filed on April 13. The hearing was delayed at the request of counsel for claimant so that he could produce one or more out of town witnesses.

3. Because "a. It abridges the respondent's right to freedom of speech and press under the First Amendment to the Constitution of the United States. b. It is vague and indefinite with respect to the standards established to determine obscenity, and is susceptible to arbitrary and uncontrolled discretion. c. It allows suppression of reading material pending a judicial determination which may be excessively delayed."

the facts and circumstances of the case within his knowledge, with the names of the witnesses and a citation of the statute or statutes believed to have been violated, and on which reliance may be had for forfeiture or conviction." The point was abandoned because the evidence showed that section 1603 had been substantially complied with in the several papers which together constituted the report. The Court does not believe that section 1603 is a jurisdictional requirement, but calls attention to the importance of including in the list of witnesses the names of the commodity specialist, the Assistant District Director of Customs, and any other members of the informal committee who may have considered the matter, whether the opinions of those persons were that the material was obscene, or not obscene, or possibly obscene. In this way, the United States Attorney will be able to supply promptly to claimants' attorneys the names of possible witnesses whom one side or the other may wish to call, without the need for claimants' attorneys to obtain such information by interrogatories or other customary discovery devices.

### IV.

■ At the conclusion of the government's case, Claimant moved for judgment because the government had not offered any evidence except a stipulation of facts, generally those set out in footnote 2 above, and a copy of the magazine itself, Solis 84, and had not offered the testimony of any expert or other witness on the issue of obscenity. That motion was denied. The Court adheres to the view expressed in the *Exclusive* opinion "that expert testimony is desirable, if not necessary, to show what reaction deviates would have to almost any type of stimulus. Whether expert testimony is necessary to prove the probable reaction of the average man to various stimuli depends upon the nature of the material. Some may be so esoteric as to require expert testimony; other stimuli, like the pictures of the women in the 'magazine' Exclusive, are so elemental that the ordi-

nary judge or juror should be able to recognize the nature of their appeal to the average man." 253 F.Supp. 493. Kahm v. United States, 5 Cir., 300 F.2d 78, 84 (1962); United States v. Levine, 2 Cir., 83 F.2d 156, 157 (1936); United States v. Kennerley, S.D.N.Y., 209 F. 119 (1913); United States v. West Coast News Co., Inc., W.D.Mich., 228 F.Supp. 171 (1964). Cf. United States v. Klaw, 2 Cir., 350 F.2d 155 (1965), discussed in United States v. One Carton Positive Motion Picture Film, S.D.N.Y., 248 F.Supp. 373, 374, 375 (1965), and in the opinion of this Court in the *Exclusive* case, 253 F.Supp. at 493 (1966). See also Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Yudkin v. State, 229 Md. 223, 182 A.2d 798 (1962); Dunn v. Maryland State Board, 240 Md. 249, 213 A.2d 751 (1965); 38 Minn.L.R. 295, 348; 45 Minn.L.R. 5, 98.

In the instant case the government does not contend that the pictures have a particular prurient appeal to any deviant group, and Dr. Jonas R. Rappaport, the psychiatrist who was called as a witness by Claimant, agreed that a psychiatrist has no special competence beyond that of a judge or juror to determine the *nature* of the appeal of the pictures to the average, normal male. He suggested that scientists or social scientists may some day devise methods for measuring the *extent* of the sexual appeal of particular stimuli, such as words or pictures, but no literature on the subject exists today.

### V.

Solis 84 contains 18 full page pictures of nude women, with the focus in most instances on the pubic area, one picture of a nude man and two nude women, and 15 pages of text, besides the title page. Although posed in outdoor settings, in only a few of the pictures are the models engaged in any usual outdoor activities. On the other hand, the models are not posed in lewd attitudes. There is a striking difference between the pictures in Solis 84 and the pictures in Ex-

clusive, which were found to be obscene by this Court. 253 F.Supp. at 485, 498. The written material in Solis 84 consists of articles, which were evidently inserted to support the argument that "Solis is the international sunbathing and nature living monthly magazine."[4] The evidence, however, indicates clearly that Solis 84 is dominantly and essentially a picture book of nude women, and that it is designed for and will be primarily disseminated to men and boys who would be interested in such pictures.

The controlling law is set out in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), as elaborated and in one respect "adjusted" by Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). A Book Named "John Cleland's Memoirs of a Woman of Pleasure" et al. v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); and Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964).

In A Book Named "John Cleland's Memoirs, etc. v. Attorney General of Com. of Massachusetts (the Fanny Hill case), Mr. Justice Brennan said:

> "We defined obscenity in Roth in the following terms: '[W]hether to the average persons, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S., at 489 [77 S.Ct., at 1311]. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient

interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. * * * Each of the three federal constitutional criteria is to be applied independently." 383 U.S. 418, 86 S.Ct. at 977.

The importer claims that the articles in Solis 84 present an idea (the philosophy of nudism) and have some educational value, and that the magazine therefore cannot be said to be *utterly* without redeeming social value.

The articles are not prurient or patently offensive; the fact that they promote nudism is not a ground for finding the books obscene. Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S. Ct. 365, 2 L.Ed.2d 352 (1958). On the other hand, the mere fact that the articles "present an idea" does not necessarily give the magazine any redeeming social value. The publication must be judged as a whole.[5] Roth, 354 U.S. at 489, 77 S.Ct. at 1311. So judged, it is clear that Solis 84 is essentially a picture book of nude women and that it is not a bona fide promotion of nudism. This conclusion is supported not only by an examination of the booklet itself, but also by several items of evidence. There is a striking difference between the format and pictures in Solis 84 and the format and pictures in the magazines considered by the Supreme Court in *Sunshine Books,* which may be considered bona fide nudist magazines.[6]

The expert on nudism and nudist magazines, called by Claimant, and the expert from the Post Office Department, called by the government, testified that the character of nudist magazines changed after the decision of the Su-

---

4. This wording appeared also on the title page of "Hellenic Sun" Number Two. See 253 F.Supp. at 498, 501.

5. To suggest an extreme example, a picture book of admittedly obscene photographs would not be protected by printing in the books the first ten Amendments to the

Federal Constitution or the Ten Commandments, however great the social value of those provisions may be.

6. The nudes shown in those magazines were for the most part engaged in sports and other normal outdoor activities and the focus was not on the genitalia.

preme Court in *Sunshine Books*. They have customarily added more posed pictures of nude women showing genital areas, as distinguished from scenes in nudists camps, and have increased the proportion of pictures versus text. The government expert added that the new emphasis has become more pronounced, and daring in the last two or three years. This testimony applies even more strongly to such magazines as the thirty volumes of Solis offered in evidence by Claimant than to the domestic nudist magazines also offered in evidence by Claimant. The Court is satisfied that Solis 84 is designed for and will be disseminated to males interested in the pictures, not to persons interested or who may become interested in nudism as such, and that it is utterly without redeeming social value.

Two more questions must be considered in determining the issue of obscenity: whether Solis 84 appeals to the prurient interest of the persons for whom it is designed, males above the age of puberty, and whether it is patently offensive.

■ Expert testimony is not needed to prove that not all sexual interest is prurient, morbid, shameful, lewd or lascivious, but may be normal and healthy. The Court agrees with the testimony of Dr. Rappaport, and would have reached the same conclusion without such testimony, that although the pictures in Solis 84 could titillate many normal males, the degree of sexual interest aroused thereby would not be very great in most instances, depending upon a variety of circumstances, and that the interest aroused would usually not be of a character which could properly be described as prurient.

■ The Court further concludes that Solis 84 does not so affront contemporary community standards relating to the description or representation of sexual matters as to be patently offensive. This conclusion is based upon the experience and judgment of the Court; most of the magazines offered in evidence by Claimant were not admissible to prove con-

temporary community standards. Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204, 206 (1961). See also discussion in the opinions of this Court in the *Exclusive* case, 253 F.Supp. at 485, and in the *Hellenic Sun* case, 253 F. Supp. 498.

The Court concludes that Solis 84 is not obscene within the meaning of 19 U.S.C.A. § 1305.