[No. 2861.  Decided June 14, 1898.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER
H. ERVING, *Appellant*.

CRIMINAL LAW — STATUTE OF LIMITATIONS — COMMENCEMENT OF PROSE-
CUTION — SECONDARY EVIDENCE — HOMICIDE — SUFFICIENCY OF EVI-
DENCE.

Under Code Proc., § 1188 (Bal. Code, § 6780) which provides
that prosecutions for the offenses of murder and arson, where
death ensues, may be commenced at any period after the com-
mission of the offense;  and for offenses the punishment of which
may be imprisonment in the penitentiary, within three years
after their commission, the term murder includes both degrees
of that offense, and manslaughter, and for such crimes a prose-
cution may be instituted at any period after the commission of
the offense, although the lower degrees of homicide may be pun-
ished only by imprisonment in the penitentiary.

A preliminary examination before a committing magistrate
constitutes the commencement of a prosecution within the mean-
ing of Code Proc., § 1188, fixing a limitation on the commence-
ment of prosecutions.

When a letter is admissible in evidence, secondary evidence
of its contents is admissible, when the witness testifies that he
has no idea where the letter is and cannot produce it in court.

A verdict finding defendant guilty of murder in the second
degree is warranted, when it appears from the evidence that
deceased was found at the bottom of an abandoned well on an
unoccupied farm on Whidby Island some three years after his dis-
appearance, with marks on his skull indicating he had been
struck there by a blunt instrument;  that deceased was last seen
alive in company with defendant, going in the direction of the
premises where the body was afterward discovered;  that de-
fendant and deceased had become acquainted in the city of Seat-
tle at a time when deceased had money on his person;  that
defendant induced deceased to go to Whidby Island, promising
him employment;  that defendant represented, upon being asked
what had become of his friend (deceased), that the latter had
returned to Seattle the day before;  that there was but one boat
a day from the island, and that deceased did not take the boat
on the day indicated by defendant;  that the island was sparsely

settled, the people well known to one another, and the move-
ment of strangers always a matter of note; that defendant left
the island and lived under an assumed name; and that when
arrested he denied his real name and claimed he never knew
such a man as the deceased.

Appeal from Superior Court, Island County.—Hon.
J. G. McClinton, Judge. Affirmed.

*Frederick R. Burch*, and *Scott & Ellsworth*, for appel-
lant.

*Lester Still*, Prosecuting Attorney (*Craven & Craven*,
of counsel), for The State.

The opinion of the court was delivered by

Gordon, J.—The appellant was tried in the superior
court of Island county on the charge of murder in the first
degree, found guilty of murder in the second degree, and
sentenced to imprisonment in the penitentiary for the
period of twenty years. From the judgment of con-
viction he has appealed. The motion of the prosecuting
attorney to dismiss the appeal and the further motion to
strike the statement of facts are considered by the court
to be without merit and they are therefore denied.

There are but three assignments of error to be consid-
ered in this case. The first is that the prosecution was
not commenced within three years after the commission
of the offense and is consequently barred by the statute
of limitations. The information alleges that the offense
was committed on or about the 11th day of July, 1894.
Section 1188, 2 Hill's Code (Bal. Code, § 6780) is as fol-
lows:

"Prosecutions for the offenses of murder and arson,
where death ensues, may be commenced at any period after
the commission of the offense; for offenses the punish-
ment of which may be imprisonment in the penitentiary,
within three years after their commission; . . . ."

We think that the term " murder " as used in the first part
of this statute includes both degrees of that offense as well
as manslaughter, and that a prosecution therefor may be
instituted at any period after the commission of the of-
fense.    That part of the section which reads that " for
offenses the punishment of which may be imprisonment
in the penitentiary " the prosecution must be commenced
within three years, is qualified by the other part, which
provides that *murder* may be prosecuted at any time after
the commission of the offense.    To this extent the offense
of murder is excepted from the general clause requiring
all offenses the punishment for which is imprisonment in
the penitentiary to be commenced within three years.
The only case to which we have been cited that is directly
in point is *People v. Haun*, 44 Cal. 96, in which it was
held that as against the crime of murder, whether of the
first or second degree, there is no limitation of time in
which the prosecution must be commenced.    But counsel
is mistaken in the assumption that the prosecution of this
case was not commenced *within three years* after the
alleged commission of the crime, viz., July 11, 1894.
From the record and the briefs of counsel it sufficiently ap-
pears that the defendant was arrested on the 22d day of
June, 1897, and had a preliminary examination before
a justice of the peace upon this very charge.    That exam-
ination resulted in his being held for trial in the superior
court, and was the commencement of the prosecution with-
in the meaning of the statute.    The argument that the
prosecution was not commenced within three years rests
upon a false assumption.

The next assignment is that the court committed error
in permitting witness Garrison—a brother of the deceased
—to testify on re-direct examination to the contents of a
letter purporting to have been written by the deceased

from Seattle on July 3, 1894. The objection at the trial
was that it was not the best evidence. The witness testi-
fied that he did not know where the letter was, that he
could not produce it in court, that he had no idea where
it could be found, and, as we think, laid the foundation for
the introduction of the secondary evidence. There is an-
other reason why the ruling cannot be disturbed. On
cross-examination the appellant had asked the witness what
was said by the deceased in that letter, and thus opened
the door to the re-direct examination which followed.

The remaining question for consideration is, was the evi-
dence sufficient to justify. the verdict? The offense was
alleged to have been committed on Whidby Island in
July, 1894, near the village of Chicago. In the month
of June and in the fore part of July, 1894, the deceased,
Finley Garrison, was stopping in the city of Seattle seek-
ing employment. It was fully established that the de-
fendant was in his company at that place and roomed
with him at the Queen City hotel for a couple of nights.
While there, on July 8, 1894, deceased had a conversation
with witness Bruce—with whom he was acquainted—and
in the course of that conversation stated to the witness that
he was going to Whidby Island to engage in work, driv-
ing a team in a logging camp. In the course of that con-
versation the defendant came up and was introduced by
the deceased to the witness as " the man that he was going
to work for." On July 3, 1894, the deceased wrote to his
brother that he had hired out to drive a team for a period of
six months. It was shown that in the early part of June
the defendant had upwards of a hundred dollars in money
on his person. On or about the 9th of July, 1894, the
deceased went to Whidby Island for the first time. He
was a stranger at that place, where the defendant was then
residing in the family of his father. Several witnesses

who were acquainted with the defendant testified to having seen him July 9 and 10 in company with the deceased, who was a stranger to them, but whom they identified at the trial from the clothing and a photograph introduced. The last time that the deceased was seen alive was on or about the 11th day of July, 1894, and at that time he was in defendant's company, going in the direction of the Bradley farm. This latter place is located about two miles from the village of Chicago. It contained in the summer of 1894 about two acres of clearing which was surrounded by timber. About two hundred feet from the little house that stood in the clearing and at a point in the woods surrounded by dense underbrush is a well. The Bradley place had been unoccupied from January, 1894, until May, 1897. On the 4th day of the latter month, while engaged in cleaning out this abandoned well, the remains of a man were found at the bottom of the well. The well itself was about forty feet deep. The uncovered mouth or opening to the well was about eighteen by twenty-two inches. On the right side of the skull, just above the ear, was a fracture which in the opinion of the physicians who testified at the trial was caused by some blunt instrument, and which was considered by them as sufficient to have caused death. Prior to the spring of 1894 deceased had a bank account with the Bennett National Bank of Whatcom. In the clothing taken from the well was found a bank book of deposit containing the name of the deceased and various entries. There was also found in the clothing a bottle of ointment and several pieces of paper. These different articles, together with the clothing and the filling contained in the teeth, were fully identified. From the evidence in the case there can be no reasonable doubt but that the remains found in the well were those of Finley Garrison, and that his death

was caused by violence. Nor do we think the evidence less convincing as to the identity of the defendant. He was entirely familiar with the locality where the crime was committed and had worked in the near neighborhood of this well. The evidence tended very strongly to show that he had induced the deceased to accompany him to Whidby Island on the pretext that he would give him employment. This is shown both by the letter of the deceased written to his brother as late as July 3, and testimony of witnesses Bruce and Zent. On July 12th the defendant told witness Zent, who asked him "where his friend had gone " that the deceased had gone on the day before to Seattle to obtain supplies. It was shown by parties who were at the boat landing on that and the previous day when the boat went out that the deceased had not gone. It must be remembered that the village was small, that the country was sparsely settled, that few strangers visited that locality, that those living there were well known to each other, and the presence of a stranger in their midst was a subject of more or less comment. Communication with the outside world was through the medium of a steamer making daily trips to and from the village. Shortly after the disappearance of the deceased the appellant left his home on Whidby Island, and never returned until he was arrested upon the present charge. After leaving Whidby Island he assumed the name of Harry McNabb, and by that name was known thereafter until his arrest. To Mrs. Gitteau, for whom he worked from November, 1894, to February, 1895, he stated that his parents were living in New York City, whereas, as a matter of fact, they were at that time living on Whidby Island. The officer who arrested him testified that he stated to the defendant that he arrested him as *Walter Erving*, upon the charge of murdering *Finley Garrison*, that the defendant then insisted that *Erving* was not

his name, that his name was McNabb, and that he did not know Finley Garrison and did not know of such a man. There were numerous circumstances shown at the trial which tended most strongly to establish the defendant's guilt and the verdict is sustained by the evidence. We have given the appellant's case careful consideration and are unable to discover any reversible error in the record of the proceedings. It follows that the judgment must be, and it is, affirmed.

Scott, C. J., and Anders, Dunbar and Reavis, JJ., concur.