## McMORRIS *v.* STATE OF MARYLAND

[No. 77, September Term, 1975.]

*Decided February 25, 1976.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges, Levine, Eldridge and O'Donnell, JJ.

*Harriette Cohen* and *George E. Burns, Jr., Assistant Public Defenders,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. O'DONNELL, J., dissents and filed a dissenting opinion at page 72 *infra.*

We shall here affirm a determination by the Court of Special Appeals in *McMorris v. State,* 26 Md. App. 660, 338 A. 2d 912 (1975), that the prosecution of appellant, Lee Andrew McMorris (McMorris), was not barred by limitations.

On August 21, 1973, a warrant was issued out of the District Court of Maryland for Baltimore County charging that McMorris "on or about 1-23-73 . . . did conspire with Herman Green & Walter Smith to sell heroin to Det. Ken Redding . . . ." McMorris was apprehended on June 14, 1974. On July 22, 1974, the Grand Jury for Baltimore County indicted McMorris on three counts. In each instance the acts were alleged to have occurred on January 23, 1973. The first count charged a conspiracy with Green and Smith to unlawfully distribute heroin. This count was withdrawn from the jury by the trial judge. The second count charged a conspiracy with the same persons "to violate the controlled dangerous substance laws of the State of Maryland, being Article 27, Sections 276-302 . . . ." The third count alleged unlawful distribution of heroin. The jury returned guilty verdicts on the second and third counts. Since the third count involved a felony, no contentions have been raised relative to the statute of limitations as applied to the prosecution under it.

The relevant statute of limitations in effect on the date of the conspiracy was Code (1957, 1972 Repl. Vol.) Art. 57, § 11, which then read in pertinent part:

"No prosecution or suit shall be commenced for

any fine, penalty or forfeiture, or any misdemeanor, except those punished by confinement in the penitentiary, unless within one year from the time of the offense committed . . . ."

This section was repealed effective January 1, 1974, by Chapter 2, § 2 of the Acts of the First Special Session of 1973, so that on the date of the indictment the pertinent statute was Code (1974) § 5-106 (a) Courts and Judicial Proceedings Article. It provides that "a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed." [1] The Court of Special Appeals said it "perceive[d] no legislative intent to change the effect and meaning of the statute of limitations in the recodification." We agree. Accordingly, under the holding of this Court in *Archer v. State*, 145 Md. 128, 136-37, 125 A. 744 (1924), the prosecution here would be barred unless commenced or instituted within one year from the date of the end of the conspiracy. We granted the writ of certiorari "limited solely to the question whether the trial court erred in rejecting [McMorris'] motion for judgment of acquittal in that the prosecution for conspiracy was barred by the statute of limitations . . . ."

McMorris here advances three arguments, (1) that "[t]he State elected to abandon its prosecution under the arrest warrant and therefore the warrant did not prevent the running of the statute of limitations," (2) that "[t]he offense charged in the arrest warrant was not the offense for which [McMorris] was convicted and therefore the warrant could not toll the statute as to the latter offense," and (3) that "[c]ount two of the indictment was so defective that it was invalid and therefore incapable of tolling the statute." We do

---

1. As pointed out by Judge Menchine for the Court of Special Appeals, the Revisor's Note to § 5-106 states:

"Subsections (a) and (b) are new language derived from Article 57, § 11. This section applies to all misdemeanors, including common-law misdemeanors but excluding misdemeanors made punishable by imprisonment in the penitentiary by statute."

not regard the last argument as having been raised by the petition for certiorari and thus encompassed in the grant.[2]

Statutes of limitation are said in 1 Wharton, *Criminal Law and Procedure* (Anderson, 1957) § 184 at 426 to fall into three categories. The Maryland statute is in the second category, "statutes which do not refer to the time of the finding of an indictment or the filing of information, but merely provide that prosecutions must be commenced within a specified time . . . ." Therefore, the inquiry here must be whether the prosecution was "commenced" or "instituted within one year" of the date of the offense. The two remaining questions presented by McMorris are merely different ways of stating the same basic question.

Our holding here today was forecast by the holdings of our predecessors in *Hahn v. State*, 188 Md. 166, 52 A. 2d 113 (1947); *State v. Kiefer*, 90 Md. 165, 44 A. 1043 (1899); and *Neff v. State*, 57 Md. 385 (1882). In *Kiefer* the Court said that "the main question in the case . . . [was] whether the presentment, assuming it to be a valid presentment, or the indictment, is the commencement of the prosecution within the meaning of our statute of limitations applicable to prosecutions for misdemeanors (Art. 57, sec. 10) . . . ." The

2. Likewise, we do not pass upon the question of whether the issue of limitations was properly raised by McMorris, the State having filed no cross-petition for certiorari. Walston v. Sun Cab Co., 267 Md. 559, 569, 298 A. 2d 391 (1973). The State contended in the Court of Special Appeals that the question had not been raised below. We note in passing, however, that in Ruble v. State, 177 Md. 600, 603, 11 A. 2d 455 (1940), Judge Sloan pointed out for this Court, "If limitations have run before presentment and indictment, it raises a question of law that ought to be decided before a case goes to trial on the merits, and a motion to quash affords a practical method of procedure to ascertain the fact and apply the law." Maryland Rule 725 a, which became effective on January 1, 1957, provides that "motions to quash are abolished, and defenses and objections raised before trial which heretofore could have been raised by [such motions] shall be raised by the motion to dismiss or to grant appropriate relief." Rule 725 b provides in pertinent part:

"Defenses and objections based on defects in the institution of the prosecution or in the indictment, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion before trial. Such motion shall include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided shall constitute a waiver thereof . . . ."

portion of Code (1957) Art. 57, § 11 which we have quoted is the exact language of § 10 as it then stood. In *Kiefer* the Court said:

"[W]e think upon a proper construction of our statute that the filing of the presentment should be considered the commencement of the prosecution. We know of no rule of construction which requires us *to limit* the ordinary and plain meaning of words used in statutes regulating criminal proceedings. On the contrary, the rule is that such language, although to be construed strictly, yet it should be given its plain meaning. *Sutherland Stat. Construction,* sec. 349. Now it is evident that the period of limitation within which a *prosecution* for a misdemeanor must be brought is the same as that prescribed for the bringing of *a suit* for any fine, penalty or forfeiture, because these two separate proceedings are included in the same section — and the period of limitation for both of them is one year. If this were a suit to recover 'a fine, penalty or forfeiture,' it needs no argument to show the docketing of the suit would constitute the commencement of the action. This would necessarily be so, because in such proceedings there is neither presentment nor indictment, but the proceeding to recover any fine, penalty or forfeiture would be an action of debt. In analogy to the rule adopted in civil cases, it would seem to be clear that the commencement of such a suit must be the time when it is docketed whether the summons be issued or not. *Bank v. Lyles,* 10 G. & J. 326; *Logan v. State,* 39 Md. 177. We see neither objection to, nor difficulty in applying the same rule to both classes of proceedings mentioned in sec. 10, namely, that the first act which clearly indicates an intention to proceed, if it be made public and a matter of record in the proper Court, shall be held to be the commencement of the prosecution or of the suit as

the case may be. In case of a prosecution this act would be the filing of the presentment by the grand jury, on information by the State's officer or the docketing of a suit to recover a fine, penalty or forfeiture." *Id.* at 174-75. (Emphasis in original.)

In the course of its opinion in *Kiefer* the Court pointed out that "it is not unusual in this State to try the accused on a presentment, without proceeding to indictment, especially in misdemeanors of the same class as that with which the defendant [wa]s [t]here charged." It is no less true that many cases are tried on warrants or charging documents. Most criminal cases in the District Court are so tried. Before the creation of that court, appeals from its predecessors, the trial magistrates in many counties, were tried de novo in the circuit courts. Those appeals were tried on such warrants.

Implicit in the holdings of this Court in *Hahn* and *Neff* is the proposition that one looks at the date of issuance of a warrant rather than the date of a subsequent grand jury indictment to determine whether the statute of limitations has been tolled. In *Hahn* the warrant apparently was issued by a justice of the peace on June 30, 1943. The indictment was filed on July 2, 1946. The charge was bastardy. The child was born October 8, 1942. The statute of limitations was two years. Our predecessors held that the statute could not be tolled by the mere filing in the proceeding in the Criminal Court of Baltimore of a warrant issued by a justice of the peace. Chief Judge Marbury stated for the Court:

"They are still the records of the magistrate, and they still have to be proved in the same way as are other proceedings taken before a Justice of the Peace who is not a court of record. *Fahey v. Mottu,* 67 Md. 250, 10 A. 68; *County Com'rs for Charles County v. Wilmer,* 131 Md. 175, 101 A. 686. They can be proved by the Justice himself or by any one familiar with his signature. When so proved, they are admissible in evidence to prove the date on which the warrant was issued. Other means also might be adopted to prove this date, but as no

> question as to such proof is before us, we shall refrain from saying more than that the papers themselves are not admissible in evidence to establish any fact contained within them, including a date, without proof of their validity." *Id.* at 171-72.

The plain implication of that decision is that the statute of limitations would have been tolled in that case had there been proper proof of the issuance of the warrant.[3]

It is stated in 21 Am. Jur. 2d *Criminal Law* § 161 (1965):

> "The statute of limitations runs from the time the offense is committed until the prosecution is commenced, unless some intervening act occurs to interrupt it. If the finding of an indictment or the filing of an information is the first step in a criminal case, the prosecution is commenced by the finding and return of the indictment or the filing of the information, and the running of the statute is thereby stopped. But when, as is usually the case, there are preliminary proceedings, the prosecution is commenced and the statute is tolled at the time a complaint is laid before a magistrate and a warrant of arrest is issued . . . ." *Id.* at 228.

Similar statements relative to the issuance of a warrant as the beginning of a criminal proceeding are found in 22 C.J.S. *Criminal Law* § 234 at 607-08 (1961), and 1 Wharton, *op. cit.* § 184 at 427. Cases supporting this proposition include *Clayton v. State*, 122 Ala. 91, 26 So. 118 (1899); *State v. Gardner*, 112 Conn. 121, 125, 151 A. 349 (1930); *Rosengarten v. State*, 171 So. 2d 591, 593-94 (Dist. Ct. of App., 2d Dist. Fla. 1965) and cases there cited; *State v. Simpson*, 166 Ind. 211, 215, 76 N. E. 544 (1906); *State v. Hemminger*, 210 Kan.

---

3. *Hahn, Kiefer,* and *Neff* were all decided before the adoption of Rule 702 in which "indictment" is defined as including "a grand jury indictment, a criminal information and a charging document as defined in Maryland District Rule 702 (Definitions)." The latter rule defines a charging document as including an arrest warrant. Therefore, those cases should be read in that light.

587, 591, 502 P. 2d 791 (1972) and cases there cited; *People v. Clement,* 72 Mich. 116, 117-18, 40 N. W. 190 (1888); *City of Cleveland v. Strom,* 67 N.E.2d 353, 358 (Mun. Ct. of Cleveland, Ohio 1946); *Jarrett v. State,* 49 Okla. Crim. 162, 168, 292 P. 888 (1930); and *State v. Erving,* 19 Wash. 435, 436-37, 53 P. 717 (1898). The statute of limitations in effect in Iowa at the time of the decision in *State v. Disbrow,* 130 Iowa 19, 106 N. W. 263 (1906), was one requiring the bringing of an indictment "within three years after the commission of the offense and not afterwards." However, the court there referred to the decisions of other states requiring that prosecution begin within the stated limit. It said:

> "The beginning of a prosecution and a finding of an indictment are not equivalent expressions. A prosecution is begun when an information is filed before a magistrate and a warrant issued for the defendant's immediate arrest. An indictment is found when it is presented by the grand jury in due form in open court and filed with the clerk. This distinction has been widely, though perhaps not universally, recognized." (Citing cases.) *Id.* at 28.

*See also* 7A *Words and Phrases* 431 (1952) relative to issuance of a warrant as the beginning of prosecution.

If the State had brought McMorris to trial on this warrant in the District Court, no question relative to limitations properly could have been raised. It elected to obtain an indictment which included charges which could not be tried in the District Court, being beyond its jurisdiction. We do not interpret, as does McMorris, the fact that the State took all charges before the grand jury as such an abandonment of the earlier proceedings in the District Court as to cause the period of limitations to be judged from the date of the indictment. Such a holding would be contrary to the reasoning of our predecessors in *Hahn, Kiefer,* and *Neff.* The proceeding before the grand jury was but a continuation of the proceeding in the District Court. It was in the interest of the orderly administration of justice that all of the charges

growing out of the incidents of January 23, 1973, were consolidated into one indictment so that they might be tried together. Obviously, trial of the conspiracy charge in the District Court and the distribution charge in the circuit court would have involved two appearances for counsel on both sides as well as for the witnesses. McMorris might well have regarded himself as being unduly harassed by the State by such a procedure.

We hold that the prosecution was "commenced" or "instituted" upon the issuance of the arrest warrant in the District Court. Since this took place less than one year from the date of the offense, it follows that the prosecution is not barred by the statute of limitations.

A reading of the arrest warrant and the second count of the indictment shows the charge set forth in the arrest warrant to be one within the second count of the indictment.[4] The evidence adduced under that indictment

---

4. If McMorris was uncertain as to what facts the State was proceeding upon under this count of the indictment, he could have demanded particulars under Rule 715 a. The purpose of a bill of particulars is to guard against the taking of an accused by surprise by limiting the scope of the proof. Veney v. State, 251 Md. 159, 163, 246 A. 2d 608 (1968), *cert. denied,* 394 U. S. 948 (1969), and Hadder v. State, 238 Md. 341, 351, 209 A. 2d 70 (1965). This he did not do, nor did he in any way challenge the indictment in the trial court.

We do not mean to say by referring to a demand for particulars that particulars could make an invalid count valid. We mention particulars simply to make plain that McMorris did have available to him a means of ascertaining the exact factual situation upon which he was charged, a means which he did not use.

The dissenting opinion has referred to Chief Judge Brune's statement in Putnam v. State, 234 Md. 537, 200 A. 2d 59 (1964), relative to review on appeal of a challenge to the sufficiency of a criminal information where the point had not been raised in the trial court. The exact statement is:

"In the trial court the appellant (then represented by counsel other than his counsel on appeal) made no objection at all to the sufficiency or to the form of the information. The preliminary question at once arises whether, in these circumstances, it may be raised on appeal. We shall assume, without deciding, that it is open here.[1]

---

1. The appellant's claim that it is reviewable rests upon the provision of Maryland Rule 725 b that a question of lack of jurisdiction or of failure of the indictment (which under Rule 702 includes a criminal information) to charge an offense 'shall be

was evidence within the purview of the arrest warrant.
Therefore, we see no inconsistency between the two which

noticed by the court at any time during the proceeding.' He
overlooks the fact that under Rule 5 i the 'Court' is so defined as
ordinarily not to include the Court of Appeals. Certainly this Court
is not expressly included as a court to which Rule 725 b is
applicable, and the appellant offers no argument to show that it is
included as a result of necessary implication. Neither does the
appellant discuss whether the failure to charge any offense falls
within the provision of Rule 885 that a question as to the
jurisdiction of the trial court may be raised and decided in this
court, though not raised and decided below. This would seem a
sounder basis for review since it is at least open to question
whether a court exercising criminal jurisdiction has power to make
a finding of guilt or to impose sentence under an indictment which
charges no offense, but we do not decide the matter." *Id.* at 540-41.

It will be noted that the Court did *not* decide whether the matter was open
for review on appeal. There was no intermediate appellate court at that
time. An appeal came directly to this Court.

Our review now is only by way of the writ of certiorari. In Walston v. Sun
Cab Co., *supra*, 267 Md. at 567, Judge Barnes said for the Court that it
"appears that the General Assembly intended that the certiorari procedure
was to provide for a discretionary appeal." He further stated:

"It should also be kept in mind that the statute contemplated
that the desirability and public interest involved in granting
certiorari are shown to us by petition and the matters presented to
us by petition should logically be those considered by us unless we
limit those matters for consideration in our order granting
certiorari. In sum, except in most extraordinary circumstances, we
will consider on an appeal resulting from a grant of a writ of
certiorari only those questions raised in the petition and matters
relevant to those questions, in the absence of a cross-petition
raising additional questions, unless, of course, we have limited in
our order granting certiorari the issues to be considered on that
appeal." *Id.* at 569.

The sufficiency of the indictment here, as pointed out by Judge O'Donnell
in his dissent, was raised in neither the trial court nor in the Court of
Special Appeals. Moreover, the petition to us for the writ of certiorari,
prepared by an assigned public defender, stated:

"The questions presented for review are as follows:
  (a) Does the issuance of an arrest warrant by the District Court
      of Maryland toll the statute of limitations?
  (b) Is the filing of an indictment necessary to suspend the
      running of the statute of limitations in a criminal matter?
  (c) Is the decision of the lower Court contrary to the law of this
      State?"

As previously stated, our grant of the writ of certiorari here was "limited
solely to the question whether the trial court erred in rejecting [McMorris']
motion for judgment of acquittal *in that the prosecution for conspiracy was
barred by the statute of limitations . . . .*" (Emphasis added.) Under the
circumstances we do not regard it as in the interest of sound judicial
administration to address ourselves to the sufficiency of the indictment.

would warrant invocation of the statute of limitations so as to prevent the prosecution. *Turner v. State,* 242 Md. 408, 219 A. 2d 39 (1966), relied upon by McMorris, is factually inapposite and does not compel a conclusion contrary to that here expressed.

> *Judgment affirmed; appellant to pay the costs.*

*O'Donnell, J., dissenting:*

I concur in the result reached by the majority which affirms the judgment. Although I do not believe that the question of limitations was properly before the Court of Special Appeals, nor is it here properly before us, notwithstanding the scope of our writ of certiorari, I nonetheless agree with the views expressed by my brethren concerning the tolling of the statute of limitations, as it related to the *first* count of the indictment — but that count was effectively dismissed in the trial court, when it was withdrawn from consideration by the jury. As I see it, the Court of Special Appeals undertook to decide an issue not properly raised — limitations — but should have instead reached the question of whether the second count in the indictment properly charged an offense. Despite the inexact wording of the scope of the question on which we granted certiorari, we equally should have reached it.

I must further dissent from the views expressed by my brethren, which engraft an exception upon Maryland Rule 712 a, as it relates to count 2, and the *imprimatur* placed upon that count in the indictment, which charged a conspiracy "to violate the controlled dangerous substance laws of the State of Maryland being Article 27, sections 276-302. . . ." Nor can I agree that any resort to a demand for particulars under Rule 715 a could be used to bolster the obvious insufficiency of count 2.

Since but one sentence was imposed under a general verdict of guilty, returned by the jury, (on both count 2 and count 3 (charging the unlawful distribution of heroin)), I would affirm the judgment.

A conviction under the third count of the indictment carried a maximum permissible sentence under Maryland Code (1957, 1971 Repl. Vol. [1975 Cum. Supp.]), Art. 27, § 286 (b) (1) of 20 years imprisonment. The sentence imposed upon the appellant (eight years), without designation as to counts, was supported by his conviction under count 3. *See Harris v. State,* 182 Md. 27, 32, 31 A. 2d 609, 611 (1943). In *Felkner v. State,* 218 Md. 300, 305, 146 A. 2d 424, 427-28 (1958), our predecessors held that "[i]f a sentence imposed under the general verdict of guilty under an indictment of several counts does not exceed the permissible maximum under the unchallenged counts, the accused may not successfully complain." *See also Bryant v. State,* 229 Md. 531, 537, 185 A. 2d 190, 193 (1962), where, in holding that although the appellant's conviction upon count 3 of an indictment had been erroneous, the sentence should not be disturbed, our predecessors pointed out that "[e]ven though a verdict of guilty under count 3, alleging a second offense for possession of narcotics, was erroneous after the appellant had been acquitted under count 1 [charging unlawful possession of heroin], the general sentence of ten years we find to be sustainable under count 4."

Nowhere in the proceedings conducted in the trial court was the term "limitations" ever used; there was no pre-trial motion filed raising that issue as to the institution of the prosecution, nor was it made any ground for the appellant's motion for judgment of acquittal. In his brief in the Court of Special Appeals, the appellant stated: "this limitations issue was brought to the trial judge's attention, albeit indirectly" — but the record does not bear this out. The appellee, in that court, in its brief stated: "the appellant did not raise the question of the statute of limitations during the trial below. Accordingly, appellee would submit that this question is not properly before this Honorable Court. Maryland Rule 1085." [1] Despite this status of the record, the Court of

---

1. The State then, assuming *arguendo* that the question was properly before the court, briefed the issue.

74

Special Appeals undertook to decide the issue of limitations, which was fully briefed before it.

Although the majority notes (n. 2) "we do not pass upon the question of whether the issue of limitations was properly raised by McMorris," they point out that such pleas, in criminal cases, were abolished by Rule 725 a and must now be raised pursuant to Rule 725 b. Notwithstanding a non-compliance with Rule 725 b, the majority nonetheless proceeded to pass upon the issue of limitations as to the first count, as if it had been raised. It can only be assumed that they do so because the Court of Special Appeals passed on the limitations issue, and we granted certiorari "limited solely to the question whether the trial court erred in rejecting [McMorris'] motion for judgment of acquittal in that the prosecution for conspiracy was barred by the statute of limitations . . ." Thus, the majority reaches the limitations issue — as apparently did the Court of Special Appeals — solely through the appellant's motion for judgment of acquittal.

As I see it, such a motion under Rule 755 cannot be used as a vehicle to raise limitations, which must be raised by a motion before trial under Rule 725 b. See Ruble v. State, 177 Md. 600, 603, 11 A. 2d 455, 456-57 (1940), cited by the majority in n. 2. See however Curry v. State, 117 Md. 587, 592, 83 A. 1030, 1031 (1912), suggesting that although the state is not confined in its proof to the date alleged in the indictment, it must prove the commission of a misdemeanor "at some time within the period of limitations."

The same Rule which mandates the raising of the defense of limitations before trial (Rule 725 b), additionally provides that: "[l]ack of jurisdiction or the failure of the indictment to charge an offense shall be noticed by the court at any time during the proceeding." Rules 1085 and 885, applicable respectively to the Court of Special Appeals and to this Court, each expressly provide that "a question as to the jurisdiction of the lower court may be raised and decided in this Court whether or not raised and decided in the lower court."

In *Putnam v. State*, 234 Md. 537, 200 A. 2d 59 (1964), Chief Judge Brune, writing for the Court, recognized the distinction between an indictment which "is so inartificially drawn, ... [as to be] open to attack," and one which "completely fails to state an offense." He there wrote:

> "The next question then is whether or not the information sufficiently states an offense to sustain the conviction. The rule which seems to be generally recognized draws a line of demarcation between an indictment or information *which completely fails to state an offense* and one which alleges all the elements of the offense intended to be charged and apprises the accused of the nature and cause of the accusation against him, even though it is defective in its allegations or is so inartificially drawn that it would have been open to attack in the trial court. 27 Am. Jur., *Indictments and Informations*, § 189, p. 735. In § 191 of the same work, p. 736, it is stated that '*a verdict will not cure a failure to allege a criminal offense or the omission of any essential allegation; any such objection is fatal after as well as before verdict.*' See also: *Wharton on Criminal Law and Procedure* (Anderson Ed.), §§ 1881, 1883, 1885; 42 C.J.S. *Indictment and Information*, § 319, pp. 1348-51; ..." (emphasis added) 234 Md. at 541, 200 A. 2d at 61.

Judge Brune further expressed the view that the failure of an indictment, or a count thereof, to state an offense, went to the jurisdiction of the trial court, and such issue was thus reviewable in this Court, even if no objection had been made to the indictment — or the count — in the trial court. 234 Md. at 540, n. 1, 200 A. 2d at 61, n. 1.

This view was adopted by the Court of Special Appeals in *Baker v. State*, 6 Md. App. 148, 250 A. 2d 677 (1969), where that court, in finding that an indictment, which charged the appellant with an attempt "to smuggle narcotics into the

Maryland House of Correction did not charge an offense," stated:

> "We do not think that a court exercising criminal jurisdiction has the power, in a jury trial, to allow a case to go to the jury, or in a court trial to make a finding of guilt, or in either case to impose sentence, under an indictment which charges no offense. See *Putnam v. State*, 234 Md. 537, note 1 at 540-41. We believe that the question of the failure of the indictment to charge an offense is a matter of jurisdiction and that, therefore, Rule 1085 permits appellate review whether or not the question was tried and decided below." 6 Md. App. at 151, 250 A. 2d at 680.

That same view was followed and applied in *Vuitch v. State*, 10 Md. App. 389, 398-99, 271 A. 2d 371, 377 (1970), *cert. denied*, 261 Md. 729 (1971).

Although the majority circumvented the issue of the sufficiency of the indictment, as being outside the scope of certiorari, and purports to limit their discussion to the question of limitations, they nonetheless put their approval upon count 2, when they hold that "[a] reading of the arrest warrant and the second count of the indictment shows the charge set forth in the arrest warrant *to be one within the second count of the indictment."* (emphasis added).

It is my view that the question of the validity of the charge set forth in count 2 was before the trial court pursuant to Rule 725 b, when the appellant made his motion for judgment of acquittal under Rule 755, on the basis of a "lack of jurisdiction" in the trial court because of "the failure of the [count] to charge an offense." The issue was properly before the Court of Special Appeals, pursuant to Rule 1085, and its holdings in *Baker v. State, supra,* and *Vuitch v. State, supra,* as "a matter of jurisdiction." Despite the imprecise language used in delineating the scope of the certiorari question, since that question arises solely by virtue of the appellant's motion for judgment of acquittal, it is my further view that the question of the failure of count 2

to state an offense is properly before us, as a jurisdictional matter under Rule 885, and under the views expressed in *Putnam v. State, supra.*[2]

Article 21 of the Maryland Declaration of Rights guarantees "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence . . ."

It was early recognized at common law that an indictment might contain separate counts, *see* 1 Chitty *Criminal Law*, 248-50, but "[e]ach count [is] in fact and theory a separate indictment. . . ." *See Latham v. Regina,* 5 Best and Smith (161 Eng. Rep.) 635, 643 (1864); *Dunn v. United States,* 284 U. S. 390, 393 (1932); thus, each count of an indictment must embody a distinct and complete accusation of a single crime and every count in an indictment must be complete in itself and describe an offense. *Beard v. State,* 216 Md. 302, 314, 140 A. 2d 672, 679, *cert. denied,* 358 U. S. 846 (1958); *Imbraguglia v. State,* 184 Md. 174, 178-79, 40 A. 2d 329, 330-31 (1944); *Simmons v. State,* 165 Md. 155, 165, 167 A. 60, 64 (1933). *See also* 41 Am. Jur. 2d, *Indictments and Informations,* § 221 at 1015.

Such requirement is recognized in Rule 716 a, providing that "[t]wo or more offenses may be charged in the same indictment in a separate count for each offense."

Every indictment, whether for an offense at common law or for one proscribed by statute, must characterize the crime and also describe the particular offense with such reasonable certainty as to enable an accused to prepare his defense and also protect him against a subsequent prosecution for the same offense. *Pearlman v. State,* 232 Md. 251, 192 A. 2d 767 (1963); *Seidman v. State,* 230 Md. 305, 187 A. 2d 109 (1962); *Willis v. State,* 205 Md. 118, 106 A. 2d 85 (1954).

An indictment is sufficient, if it informs the person

---

2. The question was briefed and argued in this Court by both the appellant and appellee.

charged of the accusation against him, as required by Article 21 of the Declaration of Rights, and "if the charge is made with sufficient definiteness to prevent the accused from being charged again with the same offense in a future prosecution." *Leet v. State*, 203 Md. 285, 100 A. 2d 789 (1953).

In *Neusbaum v. State*, 156 Md. 149, 143 A. 872 (1928), it was pointed out that "[a]t common law it was essential that the indictment should show the name of the person charged, . . . the jurisdiction within which . . . [the offense] occurred, . . . and such of the facts and circumstances incident to the crime as were reasonably necessary to identify it, and to enable the court to see whether a crime had been committed as charged." 156 Md. at 155, 143 A. 2d at 875. The court further recognized in that case, that while "it is within the power of the legislatures . . . to prescribe the form of the indictment or information, and [that] such form may omit averments regarded as necessary at common law . . . the legislature, while it may simplify the form of an indictment or information, cannot dispense with the necessity of placing therein a distinct presentation of the offense containing allegations of all its essential elements." 156 Md. at 156, 143 A. at 875. Where a count in an indictment undertakes to charge a violation of a statutory offense, it is sufficient if the charge follows the language of the statute and is sufficiently specific to inform the accused of the particular charge against him. *Bryant v. State*, 229 Md. 531, 185 A. 2d 190 (1962). *Seidman v. State, supra; Willis v. State, supra.*

Statutes which prescribe a short form of indictment are generally upheld, provided the simplified form used contains the essential elements of the crime it purports to charge. *Pearlman v. State, supra.*

Where a charge merely alleges a violation of a statutory offense by use of the statute's generic terms, without more, it is insufficient to validly state an offense. *See United States v. Cruikshank*, 92 U. S. 542 (1876), where the Supreme Court stated:

> "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it

be at common law or by statute, 'includes generic terms, *it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, — it must descent to particulars*. 1 Arch. Cr. Pr. and Pl., 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.' " (emphasis added) 92 U. S. at 558.

That Court further stated:

"[W]e think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been 'unlawfully and wickedly to commit *each, every, all, and singular the crimes* punishable by imprisonment in the State prison.' " (emphasis added) 92 U. S. at 559.

*See also Village Books, Inc. v. State,* 22 Md. App. 274, 286, 323 A. 2d 698, 705, *cert. denied,* 273 Md. 723 (1974).

Conspiracy occurs when two or more persons combine to commit a crime or to do an unlawful act, or to do a lawful act by an unlawful means. "In a prosecution for conspiracy, it is sufficient to state in the indictment [or count] the conspiracy and the object of it; ... the means by which it was intended to be accomplished need not be set out, being only matters of evidence to prove the charge, and not the crime itself. ..." *Hurwitz v. State,* 200 Md. 578, 584, 92 A. 2d

575, 577 (1952); *see Cohen v. State*, 235 Md. 62, 73, 200 A. 2d 368, 374 (1964).

The conspiracy counts (counts 1 and 2) in the appellant's indictment, used the formula for charging a conspiracy authorized by Code Art. 27, § 40, which requires that such count set forth the members of the conspiracy, as well as state "briefly the object of the conspiracy." *See Pearlman v. State, supra; Adams v. State*, 202 Md. 455, 97 A. 2d 281 (1953), *rev'd on other grounds*, 347 U. S. 179 (1954).

Count 2 meets only one of the two requirements of the formula required to be used in the short-form indictment in that it named McMorris and another as the conspirators; it fails however to properly state the species, included within the generic term "controlled dangerous substance laws" to properly set forth the object of the conspiracy. *See United States v. Cruikshank, supra*. Although it charges a concert of action, it does not allege any particular substantive prohibition within the generic term "controlled dangerous substance laws," as the object of the charged conspiracy. All that it alleges is that a conspiracy was entered into to violate at least 28 different statutory proscriptions included within the embrace of the generic term used.

The appellee, in both its argument and its brief in this Court, contends that count 2 is valid because the object of the conspiracy need only be *generally stated*, and since the means by which the conspiracy is to be carried out need not be stated in the indictment, McMorris was "fairly and reasonably inform[ed] of the offense with which he was charged." They rely on the decision of this Court in *Hurwitz v. State, supra*, where a count in an indictment, upon which a conviction was obtained, charging a conspiracy to "violate the lottery laws of the State of Maryland," was upheld.

In *Hurwitz*, Chief Judge Markell, who wrote the opinion for the Court, after reviewing the law of conspiracy and noting that the means by which a conspiracy is to be accomplished, are only matters of evidence to be proven at trial, found that the *object* of the conspiracy charged in that case was sufficiently set forth. He stated:

"The subtitle 'Lotteries' comprises sections 423-438, inclusive. 'The lottery laws of the State' in the instant indictment is identical in scope with sections 423-438 and with the laws referred to in section 696 and (in part) in section 435. The words 'to violate the lottery laws of the State' have a promiscuous sound, but by comparison with sections 423-438, mean in substance, to participate *in the conduct of a lottery,* as broadly defined. Sections 423-438, with considerable tautology, prohibit drawing a lottery, selling a lottery ticket (sec. 423), keeping or permitting to be used a house as a place for selling lottery tickets (secs. 427-428), bringing into the State or having in possession (sec. 429) lottery tickets, — in short, practically every incident of the conduct of a lottery except buying a lottery ticket. (emphasis added).

\* \* \*

"On the authority of *State v. Buchanan* and later cases in this court, and in view of the evident meaning of 'the lottery laws of the State', we hold that the first count of the instant indictment validly stated an offense and not a mere conclusion of law. In so holding *we limit our decision to the case before us, and do not approve as a general formula for the statement of the object of a conspiracy, 'to violate the . . . . . . laws of the State.'* " (emphasis added). 200 Md. at 588-89, 92 A. 2d at 580.

In *Hurwitz,* the Court, recognizing that "[u]nless by implication the lottery laws prohibit the purchase of a lottery ticket (by prohibition of sale or otherwise), . . ." pointed out that a complicity and concert of action were peculiarly necessary for the conduct of a lottery.

The holdings and reasoning in *Hurwitz* were applied in *McGuire v. State,* 200 Md. 601, 92 A. 2d 582 (1952), *cert. denied* 344 U. S. 928 (1953); *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753, *cert. denied,* 345 U. S. 955 (1953); *Adams v. State,*

*supra; Rouse v. State,* 202 Md. 481, 97 A. 2d 285 (1953), (each of which charged a conspiracy "to violate the lottery laws of the State of Maryland.").

The rationale in *Hurwitz* was a recognition that the gravamen of the offense charged — "to violate the lottery laws, etc.," was the participation in a lottery operation. Although the Court there recognized that charging one with conspiring to violate the statute's generic terms sufficiently stated the object of the conspiracy, because the various acts proscribed in Art. 27, as violations of the lottery laws, constituted but one transaction — the operation of a lottery — the Court clearly held that it was restricting its holdings to that type of conspiracy charged. Because of the peculiarity arising from the very nature of the conduct of a lottery, the single transaction-related events theory of *Hurwitz* cannot be applied to a count charging one with a conspiracy to violate generically, "the controlled dangerous substance laws."

Sections 276 through 302 of Art. 27, designated as the sections violated in count 2, make it unlawful to participate in a variety of unrelated acts, which may, and in some instances must, occur totally independent of other enumerated proscriptions. Under the lottery statutes, the participation in the different acts proscribed by those sections are but different incidents in the conduct of a lottery; the 28 different proscriptions set forth in the Code, within the embrace of the "controlled dangerous substance laws," relate to a number of various violations, not incidents of a larger operation, such as the conduct of a lottery. Within sections 276 through 302 are such diverse violations as the instructing of a child on how to sniff glue, the non-prescription dispensing of controlled substances by a pharmacist, as well as the distribution of heroin, the possession of paraphernalia used either in packaging or in administering such substances, and even the operation of a "nuisance house." All the acts prohibited in the various sections, when taken together, do not constitute component parts of a grand scheme, or criminal enterprise, as do the violations specified within the "lottery laws."

While the allegation of a conspiracy "to violate the lottery laws" undertakes to set forth the object of the conspiracy, *i.e.*, the conduct of a lottery, the allegation of a conspiracy to violate the "controlled dangerous substance laws" does not spell out the object of such a conspiracy, nor the species of the criminal conduct within sections 276 through 302 of Art. 27, which purportedly is the object of the confederation of the parties charged. While the means by which the conspiracy was to be accomplished need not be set forth, some specificity is required, within the formula authorized by Art. 27, § 40, to establish the criminal offense which is charged to be the object of the conspiracy. Although it is not necessary that an indictment or count state the precise statutory sections alleged to have been violated, "[t]here must be such specification . . . as to bring the charge within the particular portion of the statute on which [the charge] is based." *See Baker v. State,* 6 Md. App. 148, 157, 250 A. 2d 677, 683 (1969); *Kirsner v. State,* 24 Md. App. 579, 583-84, 332 A. 2d 708, 711 (1975).

The only reported opinion, sustaining the validity of a count charging a conspiracy "to violate the narcotic laws of the State of Maryland" is that by the Court of Special Appeals in *Quaglione v. State,* 15 Md. App. 571, 292 A. 2d 785 (1972), where that court found that the "rationale *and holding* in *Hurwitz*" supported a finding that such a count validly stated the object of the conspiracy. (emphasis added). Judge Carter, writing for that court, pointed out that: "The meaning of the phrase 'narcotic laws of the State of Maryland' is evident and apparent to the appellant to the same extent that the meaning of 'the lottery laws of the State' were held to be evident and apparent to the accused in *Hurwitz*." 15 Md. App. at 582, 292 A. 2d at 792.

Such an analysis however failed to differentiate between the intrinsic difference between the labelled "lottery laws" and those vast numbers of sections in the sub-title in Art. 27 relating to "narcotic laws." As previously noted, from the rationale in *Hurwitz*, the "lottery laws" set forth a cohesive group of violations aimed at the prevention of the conduct of a single enterprise — a lottery — while the sub-title of

"narcotic laws" merely sets forth a group of violations, related only by the generic term "narcotic" and the proscriptions contained therein are not aimed at the prevention of a single criminal enterprise, but multiple diverse violations.

In *Quaglione,* the Court of Special Appeals implicitly seemed to acknowledge this distinction and to recognize that their reliance on *Hurwitz* might be misplaced, when they set forth, by way of a footnote, that they were "not unmindful of the fact that in *Hurwitz,*" this Court did not approve "as a general formula for the statement of the object of a conspiracy [an allegation] 'to violate the . . . laws of the State.'" That court however elected to apply *Hurwitz* because it found the "factual situations" in the two cases were "analogous." 15 Md. App. at 582, 292 A. 2d at 792.

A reading however of the facts in both *Hurwitz* and in *Quaglione* indicates that the only similarity in the factual situations presented in the respective cases were (a) the sweeping form of the count used, which both Courts approved, and (b) the nature of the inculpatory evidence, which in both cases were recitations by third parties that they had procured contraband from the respective defendants. As I see it, these bare similarities are not enough to bring the charge in *Quaglione* — a conspiracy "to violate the narcotic laws of the State" within the ambit of the holdings in *Hurwitz v. State.*

A situation similar to that here presented was before this Court 77 years ago, in *State v. Kiefer,* 90 Md. 165, 44 A. 1043 (1899), upon which the majority strongly relies in their determination of the limitation issue.

In *Kiefer,* a grand jury presentment charged merely a "violation of the liquor law." There noting that a presentment alone, without the return of a formal indictment, was sufficient to toll not only the statute of limitations, but to support a charge and conviction thereon, our predecessors found that that charge was too vague and failed to set forth an offense. Judge Fowler, writing for the Court, reasoned thus:

"It is sufficient to say that every presentment

should clearly inform the accused of the charge preferred against him, and that it should be sufficiently explicit and definite to enable the State's officer to prepare the indictment. But the presentment in this case does neither. The only charge set forth is "violation of the liquor law" — *whether by a sale on Sunday in any of the various ways that the Sunday liquor law may be violated, or by a sale to a minor on any day, does not appear.* It is clear that the indictment on which the defendant was tried could not have been prepared ... Under those circumstances this indictment cannot be said to be the formal and technical statement *of the charge* contained in the presentment, for, as we have said, the presentment is in such general terms that it is impossible to determine *from it* what the accusation is. . . ." (emphasis added). 90 Md. at 172-73, 44 A. at 1044.

Thus, in *Kiefer,* this Court recognized that even the form of a presentment — when invoked to toll limitations — and equally so, a count in an indictment, must be sufficient on its face to show what the accusation is, and that a mere allegation of a violation of "the . . . laws" was insufficient.

Barring the one exception permitted in *Hurwitz* for "a violation of the lottery laws," a count in an indictment charging conspiracy must be specific enough, within its confines, to place the defendant on notice of the nature of the precise charge against him. Though the means by which the charged conspiracy was to be carried out, and the specifics of the conduct, as the basis for the offense, are matters of evidence, which need not be pleaded, the count must set forth with sufficient specificity the criminal conduct charged, with reasonable certainty, "to enable an accused to prepare his defense and also protect him against a subsequent prosecution for the same offense." A want of such compliance goes to the very jurisdiction of the court to try the offense which the State undertook to charge. Absent such compliance, the guarantee of Article 21 of the Maryland Declaration of Rights is not gratified.

For these reasons, reaching the validity of count 2 in the indictment, I would hold, as "a matter of jurisdiction," that it failed to charge an offense.

Nor, as I see it, can count 2 be validated by reference back to count 1 — dismissed by the trial court — even though that count did set forth the object of the charged conspiracy, namely "to sell heroin to Det. Ken Redding. . . ."

As earlier pointed out, each count of an indictment must embody a distinct and complete accusation of a single crime, and must be complete in itself and describe an offense. Rule 712 a permits however that "[a]n allegation made in one count may be incorporated by reference in another count." Absent such incorporation by reference, a count must stand or fall, on its own merits, based on its content. This is precisely the holding in *Turner v. State*, 242 Md. 408, 219 A. 2d 39 (1966), where our predecessors, in rejecting the very thesis here embraced by the majority, stated:

> "The appellee attempts to overcome this difficulty [insufficient allegations in one count of the indictment] by setting forth the somewhat startling proposition that the allegation of larceny set forth in the second count of this indictment can be read together with matters set forth in the indictment's first count so as to charge the more serious crime. The State cites no case, nor do we think it is a correct proposition of law, to support the contention that an earlier count may now be said to incorporate a portion of the facts alleged in a later count without any specific reference thereto." (footnote omitted) 242 Md. at 414, 219 A. 2d at 42.

*See also Imbraguglia v. State, supra,* at 181, 40 A. 2d at 332, where this Court held that the second count in an indictment, which charged the receiving of stolen goods, but which did not specify the goods alleged to have been stolen, was defective, even though the first count of the indictment, which charged grand larceny, did describe the property charged to have been taken in the theft. In holding that the receiving count "as to substantial facts, does not provide

sufficient information, *either with or without referring to the other count* to enable the appellant to plead a conviction in bar of a subsequent trial for any offense," (emphasis added), the Court, quoting from *Kearney v. State,* 48 Md. 16 (1877), stated:

> "The want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication." 184 Md. at 180, 40 A. 2d at 331.

Although Rule 712 a would appear to reach the deficiency found in *Imbraguglia,* and in *Turner,* by permitting an incorporation by reference, count 2 made no such attempt to incorporate the object of the conspiracy charged in count 1, by reference or otherwise.

Both the warrant which tolled the limitations for count 1, and the conspiracy charged in count 1, are violations within the generic term "controlled dangerous substance laws," and thus are theoretically embraced within the ambit of Art. 27, §§ 276-302; since count 2 however does not incorporate by reference the allegations charged in either counts 1 or 3, it must be read as standing alone, and as such, as pointed out above, charges a conspiracy of a multitude of violations of the "controlled dangerous substance laws" and is not limited, as is count 1, to a conspiracy "to sell heroin. . . ."

When the majority thus states: "a reading of the arrest warrant and the second count of the indictment shows the charge set forth in the arrest warrant *to be one within the second count of the indictment,*" (emphasis added), they attempt to buttress the invalid count 2 with the allegations set forth in the warrant, and charged in count 1, and have engrafted an exception upon Rule 712 a. They have, despite no incorporation by reference, permitted the sufficiency of

count 1 in the indictment to give validity to count 2 which, standing alone, is patently invalid, and is contrary to the holdings in *Turner v. State, supra.*

Lastly, I cannot agree with the view expressed by my brethren with the observation made about "the second count of the indictment," when they note (in footnote 3), that had the appellant made a demand for particulars, pursuant to Rule 715 a, and thereby have placed a limitation upon the scope of the proof, his failure to do so, inferentially sustains the view that count 2 validly charged an offense.

It is true that the office of a bill of particulars is to guard against taking an accused by surprise by giving him notice of *the facts* upon which the State intends to rely in prosecuting its case, and in limiting the scope of the proof which may be presented at trial. *See Hadder v. State,* 238 Md. 341, 209 A. 2d 70 (1965). It serves to amplify the allegations which are charged in the indictment. *See Veney v. State,* 251 Md. 159, 246 A. 2d 608 (1968). It is not intended however that a bill of particulars provide information necessary to a valid indictment, or count. Its purpose is not to supplement or cure the defects in a charge. *Seidman v. State, supra; see State v. Lassotovitch,* 162 Md. 147, 159 A. 362 (1932). When filed, a bill of particulars does not become a part of an indictment, *Delcher v. State,* 161 Md. 475, 482, 158 A. 37, 41 (1932) and hence, cannot be used to supply the lack of an allegation required to be set forth in a count or indictment. *Seidman v. State, supra,* at 314, 187 A. 2d at 114. As was succinctly stated in *Thomas v. State,* 173 Md. 676, 688, 197 A. 296, 302 (1938): "In other words, a 'bill of particulars is not designed to uphold an insufficient indictment, but only to be used where the indictment is sufficient upon demurrer. It cannot change the offense charged nor in any way aid an indictment fundamentally bad, although it may remove an objection on the ground of uncertainty [of the specifics of the charge].' 31 C.J. 753."

Although statutes prescribing the short form of indictment (here Art. 27, § 40, as to conspiracy) are generally upheld on the ground "that the right of the defendant to demand the particulars of the accusation

protects him against injury," it is nonetheless necessary that the simplified form of charge used contain "the essential elements of the crime [the short form] purports to charge." *See Pearlman v. State, supra,* at 258, 192 A. 2d at 771; *Neusbaum v. State, supra,* at 156-57, 143 A. at 875; *Kelley v. State,* 181 Md. 642, 647, 31 A. 2d 614, 616 (1943).

In *Seidman,* the defendant was charged in one count with conspiring with a named individual and with "certain other persons whose names are to the [Grand] Jurors * * * unknown, to violate the Pandering Laws of the State of Maryland." He was charged in seven other counts with substantive violations of the same statute relating to Pandering (Art. 27, § 430). Similarly, none of those counts set forth the names of any of the women whose earnings he was charged with having received, but merely alleged that he had received certain sums "from the earnings of a certain woman whose name is to the Jurors aforesaid unknown, who was then and there engaged in prostitution . . ." Seidman challenged the validity of each of the indictments on the ground that none of them specified the names of the women from whose illicit earnings he had allegedly received money. Even though the State, in response to the appellant's demand for a bill of particulars, set forth the names of the women, this Court held that if the names of the women had been known to the Grand Jury, when the indictment had been returned, they should have been so designated in the counts; and that the failure to include their names, if known, made the indictment defective, even if at a later date, and prior to trial, the names were supplied the defendant by a bill of particulars.

In this case, if the second count of the indictment had been sufficient to constitute a charge, a bill of particulars would have been available, in the discretion of the trial court, to delineate or amplify the allegations in the count, and even to limit the scope of the proof. If, for instance, count 2 had alleged a conspiracy "to sell narcotic drugs," then arguably the object of the conspiracy would have been set forth, and a bill of particulars might have been available to specify the type of narcotic drug involved. *See Thomas v. State, supra,*

at 687, 197 A. at 301-02; *Howes v. State*, 141 Md. 532, 119 A. 297 (1922). A bill of particulars, it seems, could be used to ascertain the *means* by which it is contended that a conspiracy charged was to be carried out.

Under the view expressed in *Seidman*, a bill of particulars supplied the appellant — assuming the trial court, in its discretion, granted such a demand — could not have sufficed to supply what was missing from the content of count 2, could not have cured the defect in that count, and could not be used to validate a count which was fundamentally bad and completely failed to state an offense. As I see it, reference to the availability of a bill of particulars is not only irrelevant from the standpoint of validating count 2, but is equally irrelevant on the issue of limitations as they relate to count 2.

The majority, in not addressing "the sufficiency of the indictment," does so by restricting itself to the narrow question posed by the certiorari question, and by concluding that it is not "in the interest of sound judicial administration" to reach it. Notwithstanding the jurisdictional nature of this issue, they point out that it "was raised in neither the trial court, nor in the Court of Special Appeals," and thus is not properly before us. This same observation could be made with equal force as to the failure of the appellant, by the required motion, to raise limitations in the trial court.

In *Walston v. Sun Cab Co.*, 267 Md. 559, 568, 298 A. 2d 391, 396 (1973), which the majority cites (footnote 4) as bolstering the limitation of the scope of review on certiorari, Judge Barnes further noted that "[o]ur practice in regard to the certiorari procedure closely follows the certiorari practice of the Supreme Court of the United States."

The Supreme Court follows the practice that that Court must be satisfied, not only that it has jurisdiction over the case, but that the lower court properly had jurisdiction over the cause under review before it. *See Mansfield C. & L. Ry. Co. v. Swan*, 111 U. S. 379, 383 (1884); *Glidden Company v. Zdanok*, 370 U. S. 530, 537 (1962); *Oklahoma v. Civil Service Commission*, 330 U. S. 127, 146 (1947) (Frankfurter, J.

concurring). Even though a question on certiorari before the Supreme Court may be limited to a specific issue, the question of jurisdiction may be raised *sua sponte*, and that Court may dismiss the case for a want thereof. *See Mitchell v. Maurer*, 293 U. S. 237, 244 (1937); *McCandless v. Furlaud*, 293 U. S. 67, 75 (1934); Robertson and Kirkland, *Jurisdiction of the Supreme Court of the United States*, § 319, pp. 620-21 (Wolfson and Kurland ed. 1951). Based upon the practice followed by the Supreme Court, I know of no reason why, as to jurisdictional questions, we should adopt a contrary practice.

Our own decisions well settle that though a question was neither briefed nor argued on appeal, nor raised in the trial court, it may nonetheless be raised before this Court, when the question involves a jurisdictional issue. *See e.g. Stacy v. Burke*, 259 Md. 390, 269 A. 2d 837 (1970); *Tate v. State*, 236 Md. 312, 203 A. 2d 882 (1964); and *Heath v. State*, 198 Md. 455, 85 A. 2d 43 (1951).

Even though the issue of the validity of count 2 was not directly raised in the trial court, nor by either counsel in the direct appeal to the Court of Special Appeals, nor expressly spelled out within our writ of certiorari, I believe that the failure of count 2 to state an offense, going as it does to the jurisdiction of the trial court, is properly within the ambit of our review.